### The People of the State of Illinois, Defendant in Error, v. Joseph Leiter, Plaintiff in Error.

1. MINES AND MINERS ACT—*who not competent to make mine examinations.* No person however well qualified may be lawfully employed to make mine examinations until he shall have procured a statutory certificate of qualification.

2. MINES AND MINERS ACT—*when criminal prosecution under, will not be sustained.* A criminal prosecution under the Mines and Miners Act must have been conducted strictly in accordance with the law to be sustained against a defendant who is admitted to have had no criminal intent, where wilfulness is not proved or claimed and where the evidence fails to show any actual knowledge on his part, either of the intention of any one connected with the mine to violate the statute, or of the fact that it has been violated.

3. MINES AND MINERS ACT—*when instruction in criminal prosecution not erroneous.* In a criminal prosecution under the Mines and Miners Act in which wilfulness is charged, it is error to instruct a jury that they may disregard the question of wilfulness.

Information for violation of mining laws. Error to the County Court of Franklin county; the Hon. THOMAS J. MYERS, Judge, presiding. Heard in this court at the August term, 1907. Reversed and remanded. Opinion filed September 12, 1908.

H. J. HAMILTON, H. R. PLATT, W. S. CANTRELL, and W. H. HART, for plaintiff in error.

W. H. STEAD and W. P. SEEBER, State's Attorney, for defendant in error; W. F. SPILLER and D. G. THOMPSON, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

In the year 1905 and for some years prior thereto, the Zeigler Coal Company, a corporation, owned and operated a coal mine at Zeigler, in Franklin county, Illinois. On April 3, 1905, an explosion occurred in its mine resulting in the loss of a large number of lives. On June 6 the state's attorney of said county filed in the County Court an information against Joseph Leiter, the president of the company, containing sixty-two counts, charging him with violation of the state mining law. The defendant was arrested and on June 10, following, gave recognizance for his appearance. Sixteen counts of the information were afterwards eliminated through proper action taken by the state's attorney and at the February term, 1907, of said court, the defendant was tried on the remaining forty-six counts before a jury, which returned a verdict of guilty on the twelfth count alone.

The count upon which the defendant was convicted was as follows:

"And the state's attorney aforesaid, in the name and by the authority of the People of the State of Illinois aforesaid, comes into open court this day and prosecutes in this behalf for and on behalf of said people and informs the said court that Joseph Leiter, late of said county and state, on the 9th day of March, in the year of our Lord one thousand, nine hundred and five, at and within the said county of Franklin, being then and there the president of the Zeigler Coal Company, a corporation then and there owning, possessing and operating a certain coal mine in said county; and he, the said Joseph Leiter, as such president, then and there having the supreme control and authority in the management of the business of said corporation including the authority to employ and dismiss employes and servants of the said corporation did then and there wilfully, unlawfully and negligently employ and suffer to serve as mine examiner in said mine one Thomas Carraher, a person who did not then and there hold a certificate of competency, either as

mine manager or mine examiner issued by the State Mining Board of the State of Illinois, contrary to the form of the statute in such case made and provided and against the peace and dignity of the people of the State of Illinois."

Motions for a new trial and in arrest of judgment were overruled and the defendant sentenced by the court to pay a fine of $500 and the costs of suit and to be committed to jail until the fine and costs were paid. To review the record of the trial in the County Court, the defendant below prosecutes this writ of error. On the trial no evidence was introduced on the part of the defendant. The evidence introduced by the people showed that the defendant Joseph Leiter was president of the Zeigler Coal Company; that he did not live at Zeigler but visited that place from time to time and on occasion gave directions concerning the installation of machinery, for the improvement in conditions at the mine, for the erection of buildings for the comfort and education of the miners and their families and in other matters connected with the mine. He is not charged in the count of the information upon which he was convicted, of being the operator of the mine nor does the evidence show that he was actually engaged in directing the mining of the coal, although it does appear that he was a person of authority at the mine whose wishes were deferred to and whose suggestions in the lines offered were followed as commands.

It appeared that the company had in its employ a general manager or superintendent who had general control of the management of the business and operation of the mine, also a mine manager who had direct charge, under the general manager, of the work below the ground, and a mine examiner. The general manager at the time mentioned in the information, was G. D. Hurd, who testified that he was in supreme control and management of the mine and property locally, except where a large amount of money was involved in which case he followed instructions which came from Mr. Leiter.

In October or November, 1904, John Graham who was then mine manager, had occasion to go to Colorado and before his departure directed Thomas Carraher, who had no certificate of competency either as mine manager or mine examiner, to make examinations during his absence. Graham was gone seven or eight days and during that time Carraher made the examinations. Subsequently on March 23 and 24, 1905, Carraher made examinations of the mine under the direction of William Baxter, who was at that time the mine manager. Carraher, who was at the time of the trial, assistant mine manager, testified that he was twenty-seven years of age; that he came to Zeigler in the fall of 1904 from Pennsylvania where he had been engaged in mining from the time he was twelve years of age and had worked at everything "from trapping to managing," but that he "was not in this country long enough" at the time he made the examinations in question, to obtain a certificate of competency.

Sub-section G, section 8, chapter 93 Rev. Stat. (Hurd 1905), upon which this prosecution is founded, provides as follows:

"It shall be unlawful for the operator of any mine to employ or suffer to serve as mine examiner any person who does not hold a certificate of competency issued by the State Mining Board: Provided, that any one holding a mine manager's certificate may serve as mine examiner."

By section 33 of the same chapter it is further provided that:

"Any wilful neglect, refusal or failure to do the things required to be done by any section, clause or provision of this act, on the part of the person or persons herein required to do them, or any violation of any of the provisions or requirements hereof or any attempt to obstruct or interfere with any inspector in the discharge of the duties herein imposed upon him, or any refusal to comply with the instructions of an inspector given by authority of this act, shall be

deemed a misdemeanor punishable by a fine not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding six months or both at the discretion of the court.''

It was not shown by the proofs nor is it claimed by counsel for the people, that the defendant Leiter had any knowledge whatever that Carraher had made the examinations of the mine above mentioned or that he was not competent to make the same. But it is claimed by counsel that Leiter, as president of the company, had supreme control and authority in the management of the business of the corporation, and was therefore responsible and liable to be punished criminally under the statute, for the acts of his mine managers, though he may have been wholly ignorant of the same; that it was his duty to know the statute was being compiled with; that it was not necessary to prove that the statute had been wilfully violated; and that it was immaterial whether Carraher was actually qualified to make the examination or not.

It is also suggested by the same counsel that while the first part of section 33 provides for the punishment of ''any wilful neglect, refusal or failure to do the things required to be done by any section, clause or provision of this act,'' yet the word ''wilful'' does not occur in the words following in said sub-section which provides ''that any violation of any of the provisions or requirements hereof * * * shall be deemed a misdemeanor,'' etc., and they assert that defendant was subject to indictment and punishment under the latter portion of the statute, notwithstanding the fact he may have had no intent whatever of violating the statute and had no knowledge whatever that the statute was about to be or had been violated. We agree with counsel for the people that the question whether Carraher was actually qualified to make the examination, was immaterial so long as he had no certificate of competency. No matter how much knowledge of mining operations he may have had, theoretical or practical, or both, he

could not be legally employed to make the examination until he had procured a certificate of competency. The assertion of the people's counsel of the right to sustain a conviction of a criminal offense against a defendant, who is admitted to have had no criminal intent, where wilfulness is not proved or claimed, and where the evidence fails to show any actual knowledge on his part either of the intention of any one connected with the mine to violate the statute, or of the fact that it had been violated, is necessarily based on technical grounds, and in such case all the proceedings leading up to the conviction must be shown to have been strictly in accord with the law.

It may not be amiss in this connection to say that it appears from an affidavit filed in support of the motion for a new trial in this case, that an information substantially in the same language as the one in question and for the same alleged offense was filed by the state's attorney of said county against the Zeigler Coal Company, which was pending at the time of the trial of this cause, and that the same was afterwards on April 26, 1907, tried before a jury which returned a verdict of not guilty, and that judgment was entered upon said verdict and said company discharged.

The information charges that the defendant did "wilfully, unlawfully and negligently employ and suffer to serve as mine examiner in said mine, one Thomas Carraher, a person who did not then and there hold a certificate of competency either as mine manager or mine examiner," etc.

Instructions 5, 6, 7, 8 and 9 given for the people, wholly ignored the question of wilfulness and authorized a conviction in case the jury found that Carraher was employed or suffered to serve as mine examiner by defendant at the mine in question, and at the time he was so employed did not hold a certificate of competency, regardless of the question whether the defendant's act was wilful or not. Said instruction 7 in fact specifically tells the jury "You are instructed that

it is not necessary in this case to prove that Joseph Leiter, the defendant intended to commit a crime. No specific intent is necessary to a conviction in this case.'' It cannot be proper to charge a defendant in an information with a wilful violation of the law and then tell the jury in the instructions that they may disregard the charge of wilfulness in determining the question of the defendant's guilt. Even if it could be conceded, as claimed by counsel for the people as aforesaid, that section 33 of the law has two divisions and that under the second division it is not necessary to prove a wilful violation of the law to warrant a conviction, yet that could not avail them here for the reason that the information in this case does not follow the language of that portion of the statute and omit the word ''wilful'' but directly charges the wilful violation of the law and defendant could not legally be convicted of a criminal offense other than that charged in the information.

Other questions of serious import are urged by counsel for plaintiff in error, as reasons for the reversal of this cause, which it is unnecessary for us to consider in this opinion.

For the errors in the instructions given for the people above mentioned, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*